UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 CR 50051-1 |
| vs. | ) | Judge Frederick J. Kapala |
| | ) | |
| JOHN C. BLANCHARD | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
OBJECTION TO THE GUIDELINES CALCULATIONS AND
REQUEST FOR DOWNWARD VARIANCE**

The UNITED STATES OF AMERICA, by ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant's objection to the presentence report ("PSR") and request for a downward variance from the Guidelines range[1]:

**BACKGROUND**

Defendant has pleaded guilty to Count One of the indictment, which charged defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. R.1, R.146.[2] Defendant objects to the PSR's inclusion of a 2 level enhancement pursuant to Guideline § 2B1.1(b)(2)(A)(i) based on the

---

[1] All citations to the Pre-Sentence Investigation Report are denoted "PSR" and followed by the applicable paragraph numbers.

[2] All citations to the documents contained in the record are denoted "R." and followed by the applicable page number. All citations to the plea agreement (R. 146) are denoted "P." and followed by the applicable paragraph numbers.

finding that the offense involved 10 or more victims. R.190.[3] Defendant does not object to remaining Guidelines calculations contained in the PSR. M. 1-18. The PSR calculated defendant's Guidelines range to be 63 to 78 months' imprisonment. PSR ¶ 86. Defendant also requests a sentence below the Guidelines range and asks the Court to sentence him to 4 years' probation. M.17-18. Defendant argues that a sentence below the Guidelines range is warranted because the factors listed in 18 U.S.C. § 3553(a) weigh in favor of such a sentence. M. 4-18. Specifically, defendant argues that the history and circumstances of the defendant, the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, the need to promote respect for the law and to provide just punishment for the offense, the need for the sentence imposed to afford adequate deterrence to the criminal conduct and the need to protect the public from further crimes of the defendant all weigh in favor of a sentence of probation. *Id.*

---

[3]All citations to defendant's sentencing memorandum (R.190) are denoted "M." and followed by the applicable page number.

## DISCUSSION

**A.    Objection to Enhancement for 10 or More Victims**

Defendant objects to the PSR's inclusion of a 2 level increase to defendant's offense level because the offense involved 10 or more victims pursuant to Guideline § 2B1.1(b)(2)(A)(i). Defendant argues that he only admitted in the plea agreement that "some of the 31 veterans" were not paid prevailing wages and that government has only provided documentation regarding 8 veterans that were not paid prevailing wages totaling $98,259.16. M. 3.

As the government indicated in its official version, the total amount of actual loss caused by defendant's participation in the scheme to defraud was $2,011,698.19. The figure includes $101,074.26 in wages that were owed to 9 veterans who were not paid prevailing wages. The $101,074.26 includes a total of $2,915.10 in wages that should have been paid to the veteran who worked under the Kirtland AFB contract (David Nielsen). Although Nielsen was not paid the prevailing wages at the time, a subsequent audit by the Department of Labor resulted in Nielsen being paid $2,915.10 in back wages he was owed. The $101,074.26 also includes a total of $98,159.16 in wages that should have been paid to the veterans who worked under the contact with the Batavia, New York VA Hospital (Anton Arimas, Joseph Bates,

3

Edward Bell, Robert Desantis, Timothy Kelly, Paul Liedecker, Jimmy Sapp, and Ronald Tauscher). Those veterans have not yet been paid. The remaining 22 veterans referred to in the plea agreement were interviewed by investigating agents and indicated that they were not paid anything for their services other than being provided a place to live. Agents were unable to obtain documentation regarding the number of hours worked by these individuals and cannot quantify the amount of wages that were unpaid. Therefore these victims' losses have not been included in the loss calculations.

In addition to the 9 veterans that were not paid prevailing wages as part of the scheme, the $2,011,698.19 loss amount includes the $1,910,623.33 in set aside contracts that defendant's company fraudulently obtained as a result of defendant's participation in the scheme to defraud in this case. In the plea agreement, defendant admitted that as part of the scheme, defendant and his co-defendants fraudulently obtained $1,910,623.33 in contracts that were set aside for Service Disabled Veteran Owned Small Businesses ("SDVOSB"). P. ¶ 6(h). The seven contracts that defendant fraudulently obtained involved contracts with the Department of Homeland Security ("DHS"), the United States Department of Veterans Affairs, and the United States Air Force. It is the government's position pursuant to

4

Guideline § 2B1.1(b)(2)(A)(i) each of the seven contracts that defendant fraudulently obtained as part of the scheme to defraud involved a separate government agency victim as well as a legitimate SDVOSB victim that suffered an actual loss in the amount of the contract due to defendant's fraud scheme.

Although it is the government's position that there were multiple victims of the set-aside contract aspect of defendant's fraud scheme, there is no need for the Court to make that determination. Since there were 9 veterans who were victims of the offense, even if it was determined that the only victim of the set aside contract aspect of the fraud scheme was the United States government as a single victim, the offense would still involve 10 or more victims (the 9 veterans who were not paid prevailing wages and the United States). Accordingly, defendant's objection to PSR's inclusion of the 2 level enhancement pursuant to Guideline § 2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims should be denied.

### B. Sentencing

Criminal sentencing has four purposes – retribution, deterrence, incapacitation, and rehabilitation. *United States v. Milbourn*, 600 F.3d 808,

812 (7th Cir. 2010).[4] Title 18, United States Code, Section 3553(a) sets forth the factors to consider when determining a sentence that is sufficient, but not more than necessary, to comply with these purposes. But first, the Court must calculate the applicable Guidelines range, which provides a starting point and initial benchmark for sentencing. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *see also* 18 U.S.C. § 3553(a)(4). Next, the Court must consider the other § 3553(a) factors. *United States v. Omole*, 523 F.3d 691, 697 (7th Cir. 2008).

Close adherence to the sentencing guidelines will reduce sentencing disparities across defendants and districts, which is itself a statutorily-mandated factor. 18 U.S.C. § 3553(a)(6); *see United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country."); *see also Booker v. United States*, 543 U.S. 220, 250 (2005) ("Congress' basic statutory goal – a system that diminishes sentencing disparity"). A court that sentences within a properly calculated Guidelines range necessarily gives

---

[4] *See also* 18 U.S.C. § 3553(a)(2)(A)-(D) ("(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

6

weight and consideration to avoiding unwarranted disparities. *United States v. Turner*, 604 F.3d 381, 389 (7th Cir. 2010).

The Guidelines generally deserve serious consideration because they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46. There is certainly no "presumption" that a Guidelines sentence is the "correct" sentence, *Rita v. United States*, 551 U.S. 338, 351 (2007), and there is "broad" sentencing discretion post-*Booker*. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). However, the Commission is "a respected public body with access to the best knowledge and practices of penology." *United States v. Goldberg*, 491 F.3d 668, 673 (7th Cir. 2007). Furthermore, the Commission is charged by statute to periodically review and revise the Guidelines as the Commission collects comments and data from numerous sources in the criminal justice system, 28 U.S.C. § 994(o), and these ongoing efforts to refine the Guidelines are another reason to seriously consider the advisory range.

Major deviations from the advisory range are more likely to be unreasonable if the grounds for the deviation are "overstated mitigating factors" or "normal incidents" of the offense. *United States v. Carter*, 538 F.3d 784, 790 (7th Cir. 2008). Similarly, the Seventh Circuit admonishes that

7

sentences relying on "common" factors, rather than "particularized" ones, to justify variances are less likely to be substantively reasonable. *Id.*; *see also United States v. Vrdolyak*, 593 F.3d 676, 681-83 (7th Cir. 2010).

As the government explains below, a sentence within the advisory range is appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence. Defendant argues that the history and circumstances of the defendant, the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, and the need to protect the public from further crimes of the defendant all weigh in favor of a sentence of probation. M. 4-18.

In *Booker,* 125 S.Ct. 738, 767 (2005), the Supreme Court held that the Sentencing Guidelines are advisory. *United States v. Alburay,* 415 F.3d 782, 785 (7th Cir. 2005). *Booker* further held that appellate courts must now review sentences for reasonableness. *United States v. Rodriguez-Alvarez*, 425 F.3d 1041, 1045 (7th Cir. 2005) (*citing Booker,* 125 S.Ct. at 765-66).

"Pursuant to *Booker*, the reasonableness of a sentence is guided by the factors set forth in 18 U.S.C. § 3553(a)." *Alburay,* 415 F.3d at 786. These factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the seriousness of the offense; (4) the sentence necessary to promote respect for the law; (5) the sentence

8

necessary to provide just punishment for the offense; (6) the sentence that would provide adequate deterrence; (7) the sentence needed to provide defendant with needed educational training, medical care, etc.; (8) the need to avoid unwarranted sentencing disparities among defendants with similar records who've been found guilty of the same offense(s); and (9) the sentencing guidelines range. *Rodriguez-Alvarez,* 425 F.3d at 1045.

"Although '[t]he concept of departures has been rendered obsolete in post-*Booker* sentencing,'"the district court may apply those departure guidelines by way of analogy' when analyzing the factors in 18 U.S.C. § 3553(a)." " *United States v. Lucas,* 670 F.3d 784, 791 (7th Cir. 2012) (*quoting United States v. Miranda,* 505 F.3d 785, 792 (7th Cir. 2007))*; United States v. Guyton*, 636 F.3d 316, 320 n. 2 (7th Cir. 2011); *United States v. Rice,* 520 F.3d 811, 821 (7th Cir. 2008)).  The Seventh Circuit "'will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence."  *United States v. McIntyre*, 531 F.3d 481, 484 (7th Cir. 2008).  *But see United States v. Jackson,* 547 F.3d 786, 792-93 (7th Cir. 2008)(stating: "An above-guidelines sentence is more likely to be reasonable if it is based on factors 'sufficiently particularized to the individual circumstances of the case' rather than factors 'common to offenders with like

9

crimes.'  *Wachowiak,* 496 F.3d at 750"). The district court's duty is to properly calculate the guidelines range and then come up with a reasonable sentence under § 3553(a).  *Id.*  (*citing United States v. Munoz*, 610 F.3d 989, 994 (7th Cir. 2010)).  If a district court decides that an outside the Guidelines sentence is warranted, it must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.  *Gall v. United States*, 552 U.S. 38, 50 (2007).

As the government explains below, a sentence within the advisory range is appropriate in this case because the § 3553(a) factors weigh in favor of such a sentence.  Regarding the nature and circumstances of the offense and the history and background of the defendant, defendant acknowledges that he pleaded guilty to wire fraud. M. 4.  Defendant further admits that he directed a co-defendant, Eric Behler, to transmit bids for contract set aside for SDVOSB's even though defendant's business, Liberating Solutions, was not owned by a service disabled veteran.  *Id.*  Defendant also admits that his companies failed to pay prevailing wages to certain veterans employed by his companies.  *Id.*

Although defendant admits that he directed Behler to submit the bids for the contracts intended for SDVOSB's knowing that Liberating Solutions was not owned by a service disabled veteran, defendant does not explain why,

10

despite his extensive interaction with veterans, he could not find a Service Disabled Veteran to replace the prior owner of Liberating Solutions. M. 11-12. Although defendant asserts that they fulfilled every contract and saved the government money by offering the lowest bids on the contracts, defendant also acknowledges that he failed to think about the other service-disabled veteran owned businesses that were cheated out of contracts by defendant's conduct. M. 11-12. Defendant's conduct in failing to pay prevailing wages to veterans as required and in obtaining contacts valued at over $1.9 million harmed the very individuals that he asserts he asserts he was trying to help. This conduct warrants a sentence within the Guidelines range.

Defendant also argues that his history and characteristics show that defendant was not trying to prey on "down-on-their-luck veterans" but rather defendant, a veteran himself, was merely trying in a misguided fashion, to aid other veterans. M.4-12. Defendant highlights his accomplishments in aid of veterans including helping a service disabled veteran by hiring him to manage a trucking company that was a funding source for a non-profit company. M. 4-12. It is the government's position that defendant's background and characteristics, including defendant's military service and his efforts on behalf of veterans, should be considered by the Court in

11

determining where within the Guidelines range to sentence defendant but that they do not warrant a variance from the Guidelines range.

Regarding defendant's history and characteristics, defendant correctly points out that he does not have an extensive criminal history. However, as noted in the presentence report, defendant is the 100% shareholder in two corporations that owe the IRS a total of over $360,000 in unpaid taxes for the tax years, 2006 and 2009-2013. PSR ¶¶ 77-78. One of the corporations also owes over $28,000 in unpaid taxes to the Illinois Department of Revenue and the Illinois Department of Employment Security. PSR ¶ 78. While there is no allegation that defendant's corporations' failure to pay the over $380,000 in taxes involved any criminal wrongdoing, it does bear on defendant's character. As the 100% shareholder of the those companies, it was defendant's responsibility to ensure that the corporations' tax obligations were met and defendant failed to do so.

For all of reasons set forth above, the nature and circumstances of the offense and the history and characteristics of the defendant weigh in favor of a sentence within the Guidelines range. Defendant's request for a variance based those factors should be denied.

In addition, other 3553(a) factors weigh in favor of within-Guidelines range sentence as well. By imposing a within-guidelines sentence, the Court

necessarily gives weight and consideration to avoiding unwarranted sentencing disparities. *U.S. v. Shamah,* 624 F.3d 449, 460 (7th Cir. 2010). Defendant argues that sentence of probation is necessary to avoid unwarranted sentencing disparities between defendant and his co-defendants, Joanne Blanchard and James Blanchard. M.17. However, while both of those defendants pleaded guilty to wire fraud, those defendants' conduct did not cause the same amount of loss that defendant's conduct caused. Joanne Blanchard was only involved in portion of the scheme to defraud involving the failure to pay veterans prevailing wages and as a result of her conduct, there was only a loss of $100,000. James Blanchard's conduct only resulted in a $2,915 loss to one veteran and a $12,000 loss to the Department of Labor. Further, Joanne Blanchard cooperated with the government and agreed to testify against defendant. Also, neither Joanne nor James had a leadership role in the offense. Co-defendant, Eric Behler was responsible for the same amount of loss as defendant. Behler agreed to cooperate and after a reduction for his cooperation received a sentence 27 months' imprisonment. Although defendant provides no explanation for why he is not similarly situated to Behler, defendant has admitted that he directed Behler to bid on the seven contracts valued at over $1.9 million knowing that defendant's company, Liberating Solutions, was not eligible to

do so.  P. ¶ 6(c-i).  It would be inappropriate to sentence Behler, the individual who defendant directed commit certain acts in furtherance of the fraud scheme and who later cooperated with the government, to prison and then sentence defendant, the leader of the scheme to defraud in this case, to probation.  A sentence within the Guidelines range is therefore necessary to avoid unwarranted sentencing disparities in this case.

Further, a sentence within the Guidelines range is necessary to promote respect for the law, afford adequate deterrence to criminal conduct, and to provide just punishment.  Defendant's scheme to defraud involved failing to pay veterans the wages they were entitled to be paid and also prevented eligible disabled veterans from successfully bidding on contacts valued at over $1.9 million.  As a result of defendant's conduct, the individuals that the contracts were intended to benefit, service disabled veterans, were cheated out of the opportunity to obtain and perform those contacts.  A sentence of probation would not promote respect for the law, afford any deterrence or provide just punishment.

## II. CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Court deny defendant's objection to the Guidelines calculations and motion for a variance from the Guidelines range.

                Respectfully submitted,

                ZACHARY T. FARDON
                United States Attorney

        By: /s Joseph C. Pedersen
                JOSEPH C. PEDERSEN
                Assistant United States Attorney
                327 South Church Street–Room 3300
                Rockford, IL 61101
                (815) 987-4444

## CERTIFICATE OF FILING AND SERVICE

I, JOSEPH C. PEDERSEN, certify that on September 23, 2014, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following documents:

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTION TO THE GUIDELINES CALCULATIONS AND REQUEST FOR DOWNWARD VARIANCE**

were served pursuant to the district court's ECF system as to ECF filers:

/s Joseph C. Pedersen
JOSEPH C. PEDERSEN
Assistant United States Attorney
327 South Church Street–Room 3300
Rockford, Illinois 61101
815-987-4444